# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MONTE WHITEHEAD,

     Plaintiff,

vs.                                  No. CV 17-00275 RJ/KK

GREGG MARCANTEL, et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court *sua sponte* under 28 U.S.C. § 1915A and on motions to dismiss filed by several of the Defendants (Doc. 2, 4, 6, 20, 55). The Court will dismiss Plaintiff's federal civil rights claims under 42 U.S.C. § 1983, and will remand the case to state court for adjudication of Plaintiff's state-law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Monte Whitehead is a prisoner in the custody of the State of New Mexico. He is proceeding *pro se*. Plaintiff Whitehead was charged with 53 counts and pled guilty/no contest to five counts of criminal sexual penetration of a minor child. He was sentenced to a term of 15 years of imprisonment. *State of New Mexico v. Monte Whitehead,* Fifth Judicial District Cause No. D-503-CR-2006-00120. After serving a portion of his prison sentence in correctional facilities in Estancia and Clayton, New Mexico, he was transferred to the Otero County Prison Facility ("OCPF") on March 6, 2013. (Doc. 1-1 at 3).

Plaintiff Whitehead filed his Civil Complaint (Tort) ("Complaint") in the State of New Mexico, County of Otero, Twelfth Judicial District Court on November 14, 2016. (Doc. 1-1). He alleges that his suit is authorized by the New Mexico Tort Claims Act, Chapter 41 NMSA,

and seeks redress for violation of his rights under Constitutional Amendments I, IV, V, VIII, and XIV, and comparable New Mexico Constitutional rights. (Doc. 1-1 at 1-2). Whitehead claims his constitutional rights were violated by several different conditions of confinement at OCPR. The Complaint was removed from the Twelfth Judicial District Court to this Court by Defendant Otero Board of County Commissioners ("Otero County") on March 1, 2017. (Doc. 1).

Otero County also filed a Motion to Dismiss the Complaint on March 1, 2017. (Doc. 2). On March 6, 2017, Defendants Ricardo Martinez and Management & Training Corporation filed their Motions to Dismiss. (Doc. 4, 6). Defendant Eason submitted his Motion to Dismiss on April 18, 2017. (Doc. 20). Defendant Keefe Corporation's Motion seeking dismissal of the Complaint was filed on June 13, 2017. (Doc. 55). Answers to the Complaint were filed by Defendants Boyd, Smith, Pascale, Prospero, Waters, and Moreno on March 6, 2017, by Defendant Frawner on March 21, 2017, by Defendant Management & Training Corporation on June 12, 2017, and by Defendant Monks on July 5, 2017. (Doc. 5, 8, 54, 67). Each Answer raises the defense of failure to state a claim on which relief can be granted. (Doc. 5 at 19, Doc. 8 at 15, Doc. 54 at 16, Doc. 67 at 16).

## II. DISMISSAL FOR FAILURE TO STATE A CLAIM

The Court has the discretion to dismiss a pro se complaint *sua sponte* for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6). A claim should be dismissed where it is legally or factually insufficient to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under Fed.R.Civ.P. 12(b)(6) the Court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading. *Twombly*, 550 U.S. at 555; *Dunn v. White,* 880 F.2d 1188, 1190 (10th Cir. 1989). The court may dismiss a complaint under rule 12(b)(6) for failure to

state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged." *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir. 1991) (quoting *McKinney v. Oklahoma Dep't of Human Services,* 925 F.2d 363, 365 (10th Cir. 1991)). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The Court liberally construes the factual allegations in reviewing a pro se complaint. *See Northington v. Jackson*, 973 F.2d 1518, 1520-21 (10th Cir. 1992). However, a pro se plaintiff's pleadings are judged by the same legal standards that apply to all litigants and a pro se plaintiff must abide by the applicable rules of court. *Ogden v. San Juan County,* 32 F.3d 452, 455 (10th Cir. 1994). The court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. Nor may the court assume the role of advocate for the pro se litigant. *Hall v. Bellmon,* 935 F.2d at 1110.

### III. ANALYSIS OF PLAINTIFF WHITEHEAD'S CLAIMS AND DEFENDANTS' MOTIONS TO DISMISS AND 12(b)(6) DEFENSES

Plaintiff Whitehead's Complaint does not expressly allege causes of action under 42 U.S.C. § 1983. However, 42 U.S.C. § 1983 is the exclusive vehicle for vindication of substantive rights under the U.S. Constitution. See, *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979); *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (Section 1983 creates no substantive rights; rather it is the means through which a plaintiff may seek redress for deprivations of rights established in the Constitution); *Bolden v. City of Topeka*, 441 F.3d 1129 (10th Cir. 2006). Plaintiff Whitehead's Complaint states:

"Plaintiff Monte Whitehead, pro se, brings this Tort for Damages for violations of Civil and Constitutional Rights . . .as follows:

(1) This is a Tort suit authorized by the New Mexico Tort Claims Act, Chapter 41 NMSA, by a corrections department prisoner who seeks damages for:

(a) Violation of Plaintiff's Constitutional Amendment rights I, V, and XIV and comparable New Mexico Constitutional rights . . .

(b) Violation of Plaintiff's Constitutional Amendment rights IV and VIII and comparable New Mexico Constitutional rights . . ."

(Doc. 1-1 at 1-2). Therefore, the Court construes the portions of Whitehead's Complaint alleging claims for violation of rights under the U. S. Constitution as civil rights claims brought under 42 U.S.C. § 1983.

Section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . .subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."

42 U.S.C. § 1983. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). There must be a connection between official conduct and violation of a constitutional right. Conduct that is not connected to a constitutional violation is not actionable under Section 1983. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998).

Further, a civil rights action against a public official or entity may not be based solely on a theory of respondeat superior liability for the actions of co-workers or subordinates. A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution. *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009). Plaintiff must allege some personal involvement by an identified official in the alleged constitutional violation to succeed under § 1983. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008). In a Section 1983 action, it is particularly important that a plaintiff's complaint

"make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claim against him or her." *Robbins v. Oklahoma,* 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in the original). Nor do generalized statements that defendants caused the deprivation of a constitutional right, without plausible supporting factual allegations, state any claim for relief. *Robbins v. Oklahoma,* 519 F.3d at 1249-50.

As set out, below, the Court concludes that Plaintiff's Complaint fails to state a claim for relief under § 1983. The Court will grant the Rule 12(b)(6) motions to dismiss filed by Defendants Otero County Board of Commissioners (Doc. 2), Ricardo Martinez (Doc. 4), and Keefe Corporation (Doc. 55), and the Rule 12(b)(6) defenses raised by Defendants Boyd, Smith, Pascale, Prospero, Waters, Frawner, Management & Training Corporation, and Monks (Doc. 5 at 19, Doc. 8 at 15, Doc. 54 at 16, Doc. 67 at 16) and will dismiss all of Plaintiff's federal claims in this case.

### A. Claims Against New Mexico Corrections Department and Official Capacity Claims Against State Officials:

Plaintiff Whitehead identifies the New Mexico Corrections Department as a Defendant and seeks to assert claims against the New Mexico Corrections Department Secretary, Gregg Marcantel, New Mexico Corrections Department Monitor Cruz, and New Mexico Corrections Department Grievance Officer Larry Phillips in their official capacities. (Doc. 1-1 at ¶¶ 4, 13, 14, 56, 109). The New Mexico Corrections Department is a state agency. As such, the claims against it are claims against the State of New Mexico. Official capacity claims against New Mexico Corrections Department officers are also claims against the State.

The State is not a "person" within the meaning of 42 U.S.C. § 1983 and, therefore, there is no remedy against the State under § 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 63-64 (1989). Therefore, the official capacity claims against the New Mexico Corrections

5

Department, Secretary Marcantel, Monitor Cruz and Grievance Officer Phillips will be dismissed.

**B. Civil Rights Claims Against Otero County:**

Plaintiff Whitehead asserts claims against the Otero County Board of Commissioners for violation of his First, Fifth, and Fourteenth Amendment rights to petition the government for redress of grievances and due process, violation of his Fourth and Eighth rights to privacy and to be free of unreasonable searches, violation of his First Amendment rights to freedom of speech and of the press, and violation of his Fourteenth Amendment rights to equal protection and due process in taxation. *See* Doc. 1-1, Claims One, Two, Four, and Five. Otero County has filed a Motion to dismiss the claims against it under Fed. R. Civ. P. 12(b)(6) on the grounds that the allegations of the Complaint are insufficient to state a § 1983 claim for relief. (Doc. 2).

A county may not be held liable under a *respondeat superior* theory in a § 1983 case. Instead, a plaintiff seeking to impose § 1983 liability on a county must identify a custom or policy that caused the plaintiff's injury. *J.B. v. Washington* County, 127 F.3d 919, 923 (10th Cir.1997) (citing *Board of* County *Comm'rs of Bryan* County *v. Brown,* 520 U.S. 397, 403 (1997)). To establish liability of a county government under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a county policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir.2006). Such a policy or custom may be established by proving the existence of an express policy or custom, or the provision of inadequate training, or a practice so widespread as to constitute custom or usage with the force of law. *Winters v. Board of* County *Comm'rs,* 4 F.3d 848, 855 (10th Cir.1993); *Sauers v. Salt Lake* County, 1 F.3d 1122, 1129 (10th Cir.1993).

Plaintiff Whitehead alleges:

"Otero County was the owner of OCPF and therefore responsible for ensuring that the contract obligations of Management and Training Corporation (MTC)- the private prison contractor who manages OCPF-were met . . . Otero County had a statutory obligation to appropriate funds and otherwise provide the necessary funding to maintain and operate a facility for the incarceration of prisoners."

(Doc. 1-1 at ¶ 5).

"Defendants Otero County . . . maintained a custom or policy which permitted or condoned the foregoing violations of Plaintiff's Constitutional rights."

(Doc. 1-1 at ¶ 44).

"Otero County allowed this culture to propogate unchecked."

(Doc. 1-1 at ¶ 56).

"The actions of . . . Otero County reveal a nefarious culture among staff, correctional officers, and administrators that was designed to harm, intimidate and harass a politically undesireable group."

(Doc. 1-1 at ¶ 65).

"Otero County and other unnamed defendants reveals a nefarious culture among staff and administrators that brings harm and anxiety to a politically undesireable group."

(Doc. 1-1 at ¶ 109).

"Otero County . . . and its employees think it is ok to treat Plaintiff and other inmates unequally or differently than other similarly situated person without regard for humane or decent treatments."

(Doc. 1-1 at ¶ 124).

Although Whitehead makes a generalized statement that Otero County "maintained a custom or policy," Whitehead does not actually identify any specific policy or custom of Otero County. His generalized allegations that its actions allowed a nefarious culture to exist within OCPF are factually insufficient to state a federal civil rights claim against Otero County. *Graves*

*v. Thomas*, 450 F.3d at 1218. The Court will grant Otero County's Motion and dismiss Plaintiff's § 1983 claims against the Otero County Board of Commissioners for failure to state a claim on which relief can be granted.[1]

### C. Claims Against Keefe Corporation:

Plaintiff Whitehead names "Keefe Corporation" as a Defendant in this case. Keefe Commissary Network, LLC ("Keefe") has filed a Motion to Dismiss, noting that there is no entity called "Keefe Corporation." (Doc. 55 at 1, nt. 1). The only claim asserted by Whitehead against Keefe is Claim Five. (Doc. 1-1 at 50). In Claim Five, Whitehead contends that Keefe violated his rights under the Fourteenth Amendment and comparable New Mexico constitutional provisions by charging tax on sales of commissary items at OCPF. Plaintiff Whitehead asserts that inmates in other facilities are exempt from taxes and only prisoners at OCPF pay taxes on commissary purchases. (Doc. 1-1 at ¶¶ 115, 122).

Keefe seeks dismissal on the grounds that it is a private actor, not a state actor, and is not subject to liability under § 1983. 42 U.S.C. § 1983 states:

> "Every person who, ***under color of any statute, ordinance, regulation, custom, or usage, of any State*** . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . ."

42 U.S.C. § 1983 (emphasis added). For liability to be imposed, Section 1983 requires that the defendant be acting under color of state law. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). The Courts, including this Court, have consistently held that, in making commissary sales, entities such as Keefe are private actors, not a state actors, and are not

---

[1] To the extent Whitehead's Complaint alleges a cause of action against Otero County under the New Mexico Tort Claims Act, the Court will not address those claims and, as set out, below, will remand them to state court.

subject to § 1983 liability. *See Ahlgrim v. Keefe Grp LLC,* No. CV 16-00177 JB/GJF, 2016 U.S. Dist. LEXIS 166006 at *9 (D.N.M. 2016); *Thornton v. GEO Grp., Inc.,* No. CV 14-00893 MCA/CG, 2016 U.S. Dist. LEXIS 140710 at *37 (D.N.M. 2016); *Leatherwood v. Rios,* No. CV 15-00767, 2016 U.S. Dist. LEXIS 171997 at *10 (W.D. Okla 2016); *Kyles v. Keefe Commissary Network, LLC,* No. CV 14-11907, 2015 U.S. Dist. LEXIS 49152 at *4 (E.D. Mich. 2015); *Bomer v. Access Catalog Co.,* 75 Fed. App'x 382, 383 (6th Cir. 2003). Keefe's Motion to Dismiss will be granted and Plaintiff Whitehead's § 1983 claims against Keefe will be dismissed.

### D. Claim One—Grievance Procedures:

In Claim One, Plaintiff Whitehead alleges that Defendants Lt. Eason, Lt. Boyd, Sgt. Smith, Warden Frawner, Mr. Phillips, Ms. Cruz and Gregg Marcantel violated the First, Fifth, and Fourteenth Amendments by frustrating his right to petition the government for redress of grievances and frustrated his right to due process of law. (Doc. 1-1 at 11). The essence of his allegations is that prison and corrections officials did not adequately respond to his prison system grievances or did not decide those grievances in a manner favorable to Plaintiff. (Doc. 1-1 at ¶¶ 31, 33-39).

Prison grievance procedures do not create a protected liberty interest and, as a consequence, do not implicate a prisoner's due process rights. *See Murray v. Albany County Bd. of County Comm'rs,* No. 99–8025, 2000 WL 472842, at *2 (10th Cir. Apr.20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.' ") (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)); *Anderson v. Colorado Dep't of Corrections,* No. 98–1477, 1999 WL 387163, at *2 (10th Cir. June 14, 1999) (unpublished op.) (holding that a state inmate's § 1983 "allegations relating to the requirements of the Department

of Corrections grievance procedure do not support a due process claim because those procedures do not create any liberty interest in the incarcerated petitioner"). *Johnson v. Richins*, No. 2:08-CV-945 CW, 2010 WL 3121144, at *7 (D. Utah Aug. 9, 2010), aff'd, 438 F. App'x 647 (10th Cir. 2011).

Defendants' handling of Plaintiff's grievances does not, by itself, give rise to a constitutional violation. A prison officer's failure to adequately respond to a prisoner's grievance does not implicate a constitutional right. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (per curiam) (official's failure to process inmates' grievances, without more, is not actionable under section 1983); *Greer v. DeRobertis*, 568 F.Supp. 1370, 1375 (N.D.Ill.1983) (prison officials' failure to respond to grievance letter violates no constitutional or federal statutory right); *see also Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982) (a prison grievance procedure does not require the procedural protections envisioned by the Fourteenth Amendment).

Prison grievance procedures are a procedural right, only, and do not confer any substantive right upon an inmate. Grievance Procedures do no give rise to a protected liberty interest requiring the procedural protections of the fourteenth amendment. *Buckley*, 997 F.2d at 495 (quoting *Azeez v. DeRobertis*, 568 F.Supp. 8 (N.D.Ill.1982)); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) (an inmate has no legitimate claim of entitlement to a grievance procedure). Therefore, to the extent Plaintiff Whitehead complains that his grievances were improperly handled in violation of his right to due process, he has failed to state a claim upon which relief may be granted.

Nor does an allegedly inadequate prison grievance system implicate a prisoner's First Amendment rights to petition the government for redress of grievances. Instead, "when the

claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance." *Boyd v. Werholtz*, 443 Fed.App'x 331, 332 (10th Cir. 2011) (alteration and internal quotation marks omitted). The failure of prison and corrections officials to handle or decide Plaintiff's grievances in different manner does not, by itself, compromise the prisoner's right of access to the courts or implicate any First Amendment rights.

Plaintiff Whitehead lacks any protected liberty interest in filing grievances, and, therefore, Defendants handling of his grievances, standing alone, fails to state a valid claim for relief under § 1983. *See Spry v. McKune*, 479 Fed.App'x 180, 181 (10th Cir. 2012) (rejecting plaintiff's claim that his due process rights were violated "when he was persuaded not to pursue a formal grievance"); *Boyd v. Werholtz*, 443 Fed.App'x at 332 (10th Cir. 2011) ("As the district court recognized, there is no independent constitutional right to state administrative grievance procedures."). Nor does Plaintiff allege that any failure of the prison grievance system denied him access to the courts, and, indeed, he was able to file this action. Plaintiff has failed to state a valid claim 1983 claim for relief based on the handling of his prison system grievances. *See Fogle v. Infante*, 595 Fed.App'x 807, 810 (10th Cir. 2014); *Boyd*, 443 Fed.App'x at 332.

### E. *Claim Two—Prison Conditions and Searches in Violation of the Fourth and Eighth Amendments:*

In Claim Two, Whitehead alleges that Defendants Frawner, Martinez, Marcantel, MTC, Phillips, Cruz, Waters, and Prospero violated Plaintiff's Fourth and Eighth Amendment rights by providing inadequate shower and toilet facilities and by conducting strip searches before and after family visits. (Doc. 1-1 at ¶¶ 47-63). Whitehead claims that the prison showers and toilets afforded him inadequate privacy protections. (Doc. 1-1 at ¶¶ 45-57).

**(1) Shower and Toilet Conditions.** Plaintiff's claims regarding conditions of the shower and toilet facilities proceed under the Eighth Amendment. Inmates alleging Eighth Amendment violations based on prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, (1994); *Wallis v. Baldwin,* 70 F.3d 1074, 1076 (9th Cir.1995). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to the inmate's health or safety. *Farmer,* 511 U.S. at 838–40; *Wallis,* 70 F.3d at 1077. The Eighth Amendment standard requires proof of both an objective and a subjective component. *Hudson v. McMillian,* 503 U.S. 1 (1992). If either of these components is not established, the court need not inquire as to the existence of the other. *Helling v. McKinney,* 509 U.S. 25, 35 (1993).

First, the deprivation alleged must objectively be sufficiently serious, resulting in a denial of the "minimal civilized measures of life's necessities." *Farmer,* 511 U.S. at 834 (*quoting Rhodes v. Chapman,* 452 U.S. 337, 347 (1981)). In proving the objective component, an inmate must establish that there was both some degree of actual or potential injury, and that society considers the acts that the plaintiff complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to those acts. *Helling,* 509 U.S. at 36; *see also Estelle v. Gamble,* 429 U.S. 97, 102, (1976).

The second subjective component requires that the prison official possesses a sufficiently culpable state of mind: "deliberate indifference to inmate health and safety." *Farmer,* 511 U.S. at 834–36. With regard to deliberate indifference, a prison official is not liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837. The subjective component requires proof that the official was: (1) aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm; (2) actually made the inference that the substantial risk of serious harm to the plaintiff existed; and (3) knowingly disregarded the risk. *Id* at 844.

Although Plaintiff Whitehead makes generalized allegations using the requisite language, his Complaint does not factually establish that the shower and toilet conditions presented some degree of actual or potential injury to him, or that society considers the conditions that the plaintiff complains of to be so grave that they violate contemporary standards of decency to expose anyone unwillingly to those acts. *Helling,* 509 U.S. at 36; *see also Estelle v. Gamble,* 429 U.S. 97, 102, (1976). Nor does he claim that any official was aware of the facts that would lead a reasonable person to infer the substantial risk of serious harm, made the inference that the substantial risk of serious harm to the plaintiff existed, and knowingly disregarded the risk. *Farmer* at 844. Whitehead's shower and toilet claims do not state a § 1983 claim for relief under the Eighth Amendment.

**(2) Strip Search Claims.** Prisoners in correctional facilities do have Fourth Amendment constitutional rights to be free of unreasonable searches and seizures. However, not all strip searches are unconstitutional. *Foote v. Spiegel*, 118 F.3d 1416, 1425 (10th Cir. 1997). A policy or practice of strip searching, even without reasonable suspicion to believe that the inmate may be concealing contraband, is constitutionally permissible. A practice impinging on an inmate's constitutional rights will be upheld where it is reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987).

Maintaining safety and order at detention centers is reasonably related to legitimate penological interests and requires the expertise of correctional officials, who must have

substantial discretion to devise reasonable solutions to problems. *Turner v. Safley,* 482 U.S. at 89. Therefore, a strip search in a correctional facility is constitutionally permissible, at least where the strip search is no more intrusive than the one the Supreme Court upheld in *Bell v. Wolfish,* 441 U.S. 520, 558 (1979). *See Powell v. Barrett,* 541 F.3d 1298 (11th Cir. 2008).

The Supreme Court, in *Bell v. Wolfish,* upheld a rule requiring pretrial detainees in federal correctional facilities "to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution[s]." 441 U.S. at 558. The Court deferred to the judgment of correctional officials that the inspections served not only to discover but also to deter the smuggling of weapons, drugs, and other prohibited items. 441 U.S. at 558. *See, also, Block v. Rutherford,* 468 U.S. 576, 586–587(1984). Correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities. *Hudson v. Palmer,* 468 U.S. at 522–523; *Block,* 486 U.S. at 584–585; *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington,* 132 S. Ct. 1510, 1511–12 (2012).

The obvious security concerns inherent in a situation where a prisoner will be placed in the general prison population warrant searches of inmates. *Archuleta v. Wagner,* 523 F.3d 1278, 1284 (10th Cir.2008). The rights of prisoners placed in custodial housing with the general jail population are not violated by a policy or practice of strip searching each one of them, provided that the searches are no more intrusive on privacy interests than those upheld in the *Bell* case, and the searches are not conducted in an abusive manner. *Bull v. City and County of San Francisco,* 595 F.3d 964, 980-81 (9th Cir. 2010); *Powell,* 541 F. 3d at 1314.

Although Plaintiff Whitehead makes generalized claims that strip searches before and after visits are unreasonable, he presents no factual allegations to support his claims. Nor do

Plaintiff's allegations establish that the searches were unreasonably intrusive. To the contrary, he appears to claim that prison officials conducted only visual strip searches, and does not claim more intrusive bodily cavity searches at issue in *Bell.* Plaintiff Whitehead's allegations regarding strip searches fail to state a § 1983 claim for relief. *Foote v. Spiegel,* 118 F.3d at 1425.

### F. Claim Three—Eighth Amendment Medical Care:

In Claim Three, Plaintiff Whitehead alleges Eighth Amendment claims for deliberate indifference in medical care. (Doc. 1-1 at 29). Plaintiff claims that the response of the OCPF medical staff, including Defendants Pascale and Monk, to a medical incident on November 20, 2015 was inadequate. (Doc. 1-1 at ¶¶ 71-87). Whitehead also contends that the response of Defendants Phillips and Marcantel to grievances he filed was also inadequate and seek to hold Defendants MTC, Otero County, and New Mexico Department of Corrections liable for the acts of their employees. (Doc. 1-1 at ¶¶ 88-94).

The Eighth Amendment protects against the infliction of cruel and unusual punishments. U.S. Const. Amend. VIII. The Eighth Amendment's prohibition against cruel and unusual punishment encompasses deliberate indifference by prison officials. *Howard v. Waide*, 534 F.3d 1227, 1235 (10th Cir.2008) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)). Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of whether it is evidenced by conduct of prison medical officials or prison guards, deliberate indifference to a prisoner's serious illness or injury may state a cause of action under § 1983. *Estelle,* 429 U.S. at 104-05.

Determining the sufficiency of an Eighth Amendment claim for deliberate indifference involves a two-pronged inquiry, comprised of an objective component and a subjective component. *Self v. Crum,* 439 F.3d 1227, 1230 (10th Cir. 2006); *Kikumura v. Osagie,* 461 F.3d 1269, 1291 (10th Cir.2006). With respect to the objective component, a medical need is serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980) (internal quotation and citation omitted). The question is not limited to whether the inmate's symptoms render a medical need sufficiently serious, but also extends to whether the potential harm to the inmate is sufficiently serious. *Mata v. Saiz,* 427 F.3d 745, 752 (10th Cir. 2005). The record establishes the first prong that Gonzales has a serious medical need. (Doc 22 at 2).

Under the subjective component, the defendant must have a sufficiently culpable state of mind. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *see also Self,* 439 F.3d at 1230–31. In other words, the plaintiff must establish that the defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir.1999) (internal citation and quotation omitted). With regard to the subjective component, the question for consideration by the Court is: "were the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?" *Martinez v. Beggs,* 563 F.3d 1082, 1089 (10th Cir.2009) (quoting *Mata,* 427 F.3d at 753). An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly or recklessly declined to act. Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody. *Howard,* 534 F.3d at 1239–40.

However, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Howard*, 534 F.3d at 1239 (quoting *Farmer*, 511 U.S. at 844–45). Accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment of a medical condition does not constitute a medical wrong under the Eighth Amendment. *See Estelle, supra*, 429 U.S. at 105-06. Moreover, a difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See, e. g., Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *Self v. Crum*, 439 F.3d at 1231; *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir.2002). A prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation. *Taylor v. Ortiz*, 410 F. App'x 76, 79 (10th Cir. 2010).

Assuming that the first prong is established, the record in this case fails to establish the second, subjective, component. Rather than showing deliberate indifference, Plaintiff Whitehead's allegations reflect a disagreement with the diagnosis and treatment he was provided by prison medical staff. While the allegations may be sufficient to support a state-law claim that the treatment fell below a medical standard of care or was negligent, they do not rise to the level of stating an Eighth Amendment constitutional violation. *Smart v. Villar*, 547 F.2d at 114.

### G. Claim Four—Violation of First Amendment Freedom of Speech and the Press:

Plaintiff Whitehead alleges in Claim Four that Defendants Marcantel, Otero County, MTC, Frawner, Martinez, Phillips, Cruz, and Moreno violated his First Amendment constitutional rights to free speech and the press. (Doc. 1-1 at 42). Whitehead claims that his rights were violated when prison officials did not allow him to receive newspaper clippings and

internet materials, books from vendors not on the approved-vendor list, and hardback books. (Doc. 1-1 at ¶¶ 102-104). He contends that the denial of access to the materials impaired his ability to write an article criticizing the conditions at OCPF. (Doc. 1-1 at ¶¶ 96-100, 105-107).

Inmates do have a First Amendment right to receive information while they are in prison, but only to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. *Jacklovich v. Simmons,* 392 F.3d 420, 426 (10th Cir.2004). When a prison regulation limits a prisoner's First Amendment rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. at 89. The validity is determined based on four factors: "(1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest; (2) whether alternative means of exercising the constitutional right remain available to inmates; (3) any effect accommodating the right would have on guards, inmates, and the allocation of prison resources; and (4) the absence of ready alternatives." *Turner,* 482 U.S. at 89–90; *accord Jacklovich,* 392 F.3d at 426; *Jones v. Salt Lake County,* 503 F.3d 1147, 1153–54 (10th Cir.2007). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. *Overton v. Bazzetta,* 539 U.S. 126, 132, (2003). *Sperry v. Werholtz,* 413 F. App'x 31, 39–40 (10th Cir. 2011).

The Courts have consistently upheld reasonable limitations on a prisoner's receipt of hardback books, mail, and other packages. *See Thornburgh v. Abbott,* 490 U.S. 401, 416 (1989)(holding that prison authorities have broad discretion in regulating the entry of material into a prison); *Turner v. Safley,* 482 U.S. at 91–92 (upholding prison restrictions on mail as reasonably related to legitimate security concerns); *Bell v. Wolfish,* 441 U.S. at 550 (upholding

ban on inmate receipt of certain hardback books and packages containing personal property and food in order to counter risk of smuggled contraband).

Prisons present unique circumstances, and government conduct that would be unacceptable in other settings may be acceptable, even necessary, in a prison. Prisoner's rights may be restricted in ways that would raise First Amendment concerns outside the prison context. *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989). An inmate does not have a First Amendment right to make violent, explicit, or harassing statements. *See Kervin v. Barnes,* 787 F.3d 833, 835 (7th Cir.2015); *Lockett v. Suardini,* 526 F.3d 866, 874 (6th Cir.2008); *Cowans v. Warren,* 150 F.3d 910, 912 (8th Cir.1998); *Ustrak v. Fairman,* 781 F.2d 573, 580 (7th Cir.1986). A prisoner's disagreement with prison restrictions, alone, does not state a claim for violation of First Amendment rights. *Turner v. Falk*, 632 F. App'x 457, 460–61 (10th Cir. 2015).

Plaintiff Whitehead does not allege that the restrictions on material by OCPF are not reasonably related to prison security concerns but, instead, simply disagrees with the restrictions. (Doc. 1-1 at ¶ 105). Moreover, the fact that Plaintiff was able to write his article demonstrates that the restrictions did not impair his constitutional right of free speech and press. (*See "Is Governor Martinez Involved in Human Trafficking?"* Doc. 1-1 at 144-149). Plaintiff Whitehead's allegations fail to state a claim of violation of his First Amendment Rights.

### *H. Claim Five—Equal Protection in Taxation:*

Claim Five asserts a Fourteenth Amendment claim against Defendants Marcantel, Frawner, Martinez, MTC, Otero County, Cruz, Phillips, and Keefe Corp. on the grounds that the charging of sales tax on prison commissary purchases violates the equal protection clause. (Doc. 1-1 at 50-53). Whitehead alleges:

> "Since Plaintiff's arrival at OCPF he and other inmates have been taxed on commissary items. State inmates at other prisons in N.M. are exempt from

paying taxes since they are wards of the state and have no voting privileges and
thus no representation in government. . . .
MTC, Keefe and state officials clam state inmates at OCPF have to pay taxes
because their commissary comes from Texas . . .
All state prisons and other private
prisons in the state operate their commissary through Keefe Corporation.
However, only state inmates at OCPF have to pay taxes."

(Doc. 1-1 at ¶¶ 115, 119, 122).

Prisoners have no federal constitutional right to purchase items (food or non-food) from a

commissary. *See Tokar v. Armontrout,* 97 F.3d 1078, 1083 (8th Cir.1996) ("we know of no

constitutional right of access to a prison gift or snack shop"); *Hopkins v. Keefe Commissary*

*Networks Sales,* 2007 WL 2080480, at *5 (W.D.Pa.2007) ("Inmates have no federal

constitutional right to be able to purchase items from a commissary"); *Torres v. Droun,* No. 01

Civ. 1844(DJS)(TPS), 2004 WL 721729, at *7 (D.Conn. Mar. 30, 2004) ("The plaintiff has no

constitutional right to purchase items from the commissary or outside vendors"); *Bagwell v.*

*Brewington–Carr,* No. 97–714–GMS, 2000 WL 1239960, at *3 (D.Del. Aug.25, 2000) ("while

incarcerated [plaintiff] does not have a constitutional right to purchase potato chips and soda

pop"). Because a prisoner does not have a federal constitutional right to purchase commissary

items, Plaintiff Whitehead's Claim Five does not state a § 1983 claim. *See, e.g., McCall v. Keefe*

*Supply Co.,* 71 Fed. Appx. 779, 780 (10th Cir.2003); *Fogle v. Pierson,* 435 F.3d 1252, 1261

(10th Cir. 2006).

## IV. REMAINING PENDING MOTIONS

Also pending before the Court are Plaintiff Whitehead's Motion for Preliminary

Injunction (Doc. 14), Motion to Amend (Doc. 23), Motion for Hearing on Motion for

Preliminary Injunction (Doc. 44), Motion for Clarification of Statements (Doc. 46), Motion to

Appoint Counsel (Doc. 47), Motion for Supplemental Pleading (Doc. 60), Motion to be Allowed

to Include Exhibits (Doc. 76), and Motion for Order to Cure Deficiency in Affidavits (Doc. 87). Because the Court is dismissing all federal claims, the Court will deny those Motions as moot.

Plaintiff Whitehead has also filed a Motion to Prevent GCCF from Interfering with Mail. (Doc. 68) and a Motion for Preliminary Injunction and Temporary Restraining Order to Prevent Guadalupe County Correctional Facility from Interfering with Plaintiffs Mail (Doc. 88). GCCF is not a party to this proceeding and, therefore, the Court cannot grant the relief requested by Plaintiff against GCCF. Plaintiff's Motions will be denied.

Defendant Lieutenant Eason has entered a special appearance and filed a Motion to Dismiss under Fed. R. Civ. 12(b)(4) and (5) on the grounds of insufficient process and service of process. (Doc. 20). Defendant Eason contends that he has never been properly served with process in this case, and Plaintiff's attempt to serve a summons through a law firm that is not authorized to accept service is invalid. (Doc. 20 at 2-3). Plaintiff Whitehead filed a Response to several motions to dismiss (Doc. 25). However, that response did not address the insufficiency process or service of process raised in Defendant's Eason's Motion. *See* Doc. 25.

Proper service of process under Fed. R. Civ. P. 4 is necessary to bring a defendant before the Court. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 344–45 (1999). Service of process is fundamental to any procedural imposition on a named defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104. (In the absence of such service or waiver of service by the defendant, a court ordinarily may not exercise power over a party the complaint names as defendant). Fed. R. Civ. P. 4(e)(2)(C) requires that the summons and complaint be served on an agent authorized to accept service of process and service on attorneys not authorized to accept that service is invalid under Rule 4. Plaintiff Whitehead fails to establish

that he has effectuated proper service of process on Defendant Eason and the Court will grant Defendant Eason's Motion to Dismiss.

Defendant Management & Training Corporation also filed a Motion to Dismiss for lack of service under Fed. R. Civ. P. 4. (Doc. 6). However, that Motion was withdrawn by MTC on May 25, 2017. (Doc. 38).

## V. <u>REMAND OF STATE LAW CLAIMS</u>

Plaintiff Whitehead originally filed his Complaint in the Twelfth Judicial District Court of the State of New Mexico. He alleges that he is proceeding under the New Mexico Tort Claims Act, N.M. Stat. Ann. 41-4-1, *et seq.* (1978). (Doc. 1-1 at 1). In addition to alleging violation of his U.S. Constitutional rights, Whitehead claims that his rights under the New Mexico Constitution have been violated. (Doc. 1-1 at 1-2).

Within the supplemental jurisdiction granted by 28 U.S.C. § 1367, a federal court has subject-matter jurisdiction over certain state-law claims. A district court's decision whether to exercise supplemental jurisdiction after dismissing all claims over which it has original jurisdiction is discretionary. *See* § 1367(c). Under § 1367(c), the district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. *Osborn v. Haley,* 549 U.S. 225, 245 (2007); *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514, (2006).

The U.S. Supreme Court has stated that needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *United Mine Workers of Amer. v. Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130 (footnote omitted). When all federal claims have been dismissed, a district court may, and usually should, decline to exercise jurisdiction over any remaining state claims. *Koch v.*

*City of Del City,* 660 F.3d 1228, 1248 (10th Cir.2011); *Smith v. City of Enid ex rel. Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998); *Young v. City of Albuquerque,* 77 F. Supp. 3d 1154, 1185 (D.N.M. 2014).

This Court is dismissing all federal claims in this case. The Court declines to exercise supplemental jurisdiction over Plaintiff Whitehead's remaining state-law claims, and will remand this proceeding to state court for adjudication of those state-law claims.

**IT IS ORDERED:**

(1) Plaintiff's Motions for Preliminary Injunction (Doc. 14), Motion to Amend (Doc. 23), Motion for Hearing on Motion for Preliminary Injunction (Doc. 44), Motion for Clarification of Statements (Doc. 46), Motion to Appoint Counsel (Doc. 47), Motion for Supplemental Pleading (Doc. 60), Motion to be Allowed to Include Exhibits (Doc. 76), Motion for Order to Cure Deficiency in Affidavits (Doc. 87), Motion to Prevent GCCF from Interfering with Mail. (Doc. 68), and Motion for Preliminary Injunction and Temporary Restraining Order to Prevent Guadalupe County Correctional Facility from Interfering with Plaintiffs Mail (Doc. 88) are **DENIED;**

(2) Defendant Lieutenant Eason's Motion to Dismiss under Fed. R. Civ. 12(b)(4) and (5) (Doc. 20) is **GRANTED;**

(3) Defendant Management & Training Corporation's Motion to Dismiss (Doc. 6) is **WITHDRAWN;**

(4) The Motions to Dismiss filed by Defendant Otero County Board of Commissioners (Doc. 2), Ricardo Martinez (Doc. 4), and Keefe Corporation (Doc. 55) are **GRANTED** as to Plaintiff Whitehead's federal civil rights claims;

(5) All federal claims asserted by Plaintiff in his Complaint are **DISMISSED** for failure

to state a claim under Fed. R. Civ. P. 12(b)(6);

    (6) This case is **REMANDED** to the State of New Mexico, County of Otero, Twelfth Judicial District Court for adjudication of Plaintiff Whitehead's state-law claims.

9·27-17

_____
UNITED STATES DISTRICT JUDGE